838 A.2d 1263

Scott M HERRICK

v.

Kay WAIN.

No. 15, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Dec. 19, 2003.

Frani Cohen Wolfe, Rockville, for appellant.

Anne Marie Jackson (Rita M. Bank, Ain & Bank, P.C., on brief), Washington, DC, for appellee.

Argued before DAVIS, SHARER and JAMES R. EYLER, JJ.

SHARER, J.

This grandparent visitation case comes to this Court as a result of the deteriorating relationship between appellant, Scott M. Herrick ("Herrick"), who appeals from a visitation order of the Circuit Court for Montgomery County, and appellee, Kay Wain ("Wain"), the maternal grandmother of his children.

Wain filed a complaint for reasonable visitation, which was referred to the court's family law master, who made findings and recommendations, to which no exceptions were filed. The circuit court, therefore, entered a *pendente lite* visitation order allowing Wain visitation with the children on the third Saturday of every month from 11 a.m. until 4 p.m.; one weeknight visit per month; and several hours on specified Japanese days of celebration.

At a later hearing on the merits, from which this appeal was taken, the circuit court ordered that visits with Wain were not then in the best interests of the grandchildren. The court suspended visitation, to be resumed only after the parties attended specified visits with Dr. Mary Donahue, the childrens' therapist. The modified schedule called for visitation on alternate Friday afternoons, with Wain picking up the children after school and returning them to Herrick by 7:30 p.m.

Appellant has presented for our review two questions, which we have rephrased somewhat for clarity:

1. Did the trial court err in granting visitation over appellant's objection, in derogation of his due process right under the Fourteenth Amendment of the United States Constitution to make decisions about his children?

2. Did the trial court err in failing to apply a presumption in favor of appellant's decision to limit appellee's visitation with the children?

We answer both questions in the negative, and shall affirm the circuit court.

## FACTUAL and PROCEDURAL HISTORY

Leta Wain ("Leta") and Scott Herrick ("Herrick") were married in 1992. Two children were born of the marriage, Leah Sumi Herrick ("Leah"), on May 15, 1993, and Kane Francis Herrick ("Kane"), on November 30, 1994. Wain is the mother of Leta Wain, and the children's maternal grandmother.

Herrick and Leta separated in 1998, and the children resided with their mother. Following the separation, and until Leta's terminal illness, Wain was present in the household with the children "just about all the time." Herrick and Leta were divorced on April 12, 2000. The Court ordered joint legal custody of the children, and granted their primary residential custody to Leta, who served as the primary caretaker of the children after the parties divorced. She subsequently bought a home for herself and the children in 2000, where Wain resided with Leta and the children.

During the separation, and before the divorce was granted, Leta became ill with cancer. During Leta's illness, Wain resided with Leta and the children for approximately one year, and became responsible for seeing to many of the childrens' needs, including feeding them, taking them to school, helping with their homework, and taking them on outings. Leta passed away on November 9, 2001.

Shortly before Leta's death, she authored a "Memorandum of Understanding" which provided that the children would transition from her custody into appellant's care when her physical condition significantly worsened. In order to assist the children in the transition, Herrick hired a full-time nanny, a choice approved by Leta. Additionally, Herrick arranged for the children to see a therapist, Dr. Donahue, to aid them in dealing with their mother's terminal illness and impending death. The children began visits with Dr. Donahue the first day that they returned to their father's care.

Leta's last will and testament, executed by her knowing of her terminal illness, emphasized her wish that her children have a relationship with Wain and the rest of her family

despite the divorce. She wished that the children continue to be raised with an understanding and the benefit of both their father's Jewish culture and her Japanese heritage.

The parties have conflicting accounts of their relationship at the time Leta was admitted to the hospital for the final time. Wain claimed that Herrick "took" the children and never brought them to say goodbye to their dying mother. In contrast, Herrick claimed that he was never contacted to take the children to the hospital to visit their mother before her death.

The record clearly illustrates, and the parties acknowledge, their contentious relationship. Herrick denied Leah's requests to spend time with her grandmother prior to her mother's death. Wain claims that Herrick consistently tried to sabotage the children's visits with her, and points to an incident in May 2002 when she was scheduled to meet the children at a local deli to celebrate Boys Day, a Japanese holiday. Herrick took the children to the deli as scheduled, without telling them that there was to be a visit with their grandmother. He fed them before the visit and took the childrens' friend along. As a result, the children were surprised and upset by the visit and it was cancelled. Wain alleges that Herrick would always allow the children to have their friends present during their visits, therefore detracting from their time with Wain. Finally, Wain alleges that Herrick involved his children in his dispute with her by telling them that she had "stolen" money set aside for them by their mother in a trust.

For his part, Herrick alleges that Wain consistently voiced her disdain for him in front of the children, even before he and Leta had divorced. Herrick further testified that prior to Leta's death, he would call her house to speak to the children and was told by Wain that the children were outside, even though they could be plainly heard in the background. He also claimed that Wain engaged in inappropriate discipline of the children in his presence, spanking them when he saw no reason to do so. Herrick argues that Wain consistently

contradicts the childrens' Jewish faith by telling them they are not Jewish, and sending them Christmas and Easter cards instead of a card celebrating the Jewish holidays. Additionally, Wain sent letters to the children that Herrick claims have a detrimental effect on them. She wrote to the children that their mother is watching them, despite the fact that Dr. Donahue told her such statements made the children uncomfortable in light of their Jewish faith. The letters were particularly problematic for Kane. Their relationship reached its nadir when a confrontation occurred at Herrick's home over Kane's pets, which escalated into a shouting match that ended with the police being called to remove Wain from the property.

Wain described her relationship with the children as "close." In an effort to teach the children about Japanese culture, she showed both children origami, the art of paper folding, and started to teach Leah the Japanese tea ceremony and Japanese flower arranging, called ichibana. Wain also celebrated Japanese holidays with the children, including Boys Day, Girls Day, the Japanese New Year, and her daughter's Memorial Day.

After Leta's death, Kane continued to act indifferently to Wain's visits, based on his perception that she showed favoritism to Leah. Leah demonstrated her disappointment by hiding or pretending to be asleep to avoid Wain.

On December 7, 2001, Wain filed a complaint for reasonable visitation by a grandparent pursuant to Md.Code Ann., Fam. Law § 9–102 (2003). Herrick filed an answer to the complaint on January 24, 2002, stating that he was not opposed to Wain's visitation with the children, but expressing concerns about the extent of the visits. As we have noted, a hearing was held on May 28, 2002 before the family law master, whose findings and recommendations were incorporated into a *pendente lite* order entered on June 10, 2002.

A merits hearing was held on Wain's complaint on December 4, 2002 and January 24, 2003, before the circuit court. The circuit court issued its opinion on February 27, 2003, and

thereafter entered a visitation order. The court discussed the relationship between Wain and Herrick in relation to the best interests of the children and ruled:

Dr. Donahue's proposed access schedule is set forth above. Both parties also proposed access schedules for Plaintiff and the children. [Herrick] proposed that, at the present time, *no* visits take place. However, he did concede that he would be amenable to whatever Dr. Donahue recommended. The Court finds that [Herrick]'s access schedule is not entitled to deference because he appears more concerned about *his* need to be respected than the children's right to love even those whom he does not love. He would indeed be entitled to deference if this Court found he could subordinate his needs to the children's best interests. The Court will adopt Dr. Donahue's proposed access schedule.

However, in the instant case, *at this time* [Wain's] visits with her grandchildren are not in their best interest, in part because of her behavior and partly because of their father's behavior. With counseling, the two adults who are most important in these children's lives *may* be able to subordinate their own needs and feelings to those of the children. Instead, each tends to dislike that part of the other that separates them rather than realizing that the children are a composition of both—they are both Japanese and Jewish—and, they need to assist the children in being able to integrate both parts of themselves in order to develop into healthy whole adults.

The Court will order [Wain] and [Herrick] to meet with Dr. Donahue for two sessions to discuss the mechanics and parameters of [Wain's] visits with the children prior to the first visit taking place. Those planning meetings are to be completed by March 30, 2003. They should include ways in which [Herrick] can encourage, support and prepare his children for visits, and activities that [Wain] might consider with the children. By April 4, 2003, [Wain] should be able to pick up the children at school and take them with her (as planned with Dr. Donahue) until 7:30 p.m. when she shall return them to [Herrick's] home. At the request of either

[Wain], [Herrick], or the children, further meetings with Dr. Donahue will occur as needed. A one-day review hearing shall be held in six months, on September 8, 2003, at 9:30 a.m.

(Emphasis in trial court's original opinion.) Herrick filed a timely notice of appeal on March 7, 2003.

## DISCUSSION

Maryland's grandparent visitation statute is found in Md. Code Ann., Fam. Law § 9–102, which provides:

An equity court may:

(1) consider a petition for reasonable visitation of a grandchild by a grandparent; and

(2) if the court finds it to be in the best interests of the child, grant visitation rights to the grandparent.

Md.Code Ann., Fam. Law 9–102 (2003).

The Court of Appeals discussed the meaning and history of 9–102 in *Fairbanks v. McCarter,* 330 Md. 39, 622 A.2d 121 (1993):

Both the language and the purpose of the statute are clear. The legislature invested trial court judges sitting in equity with the power to consider and award reasonable grandparental visitation in furtherance of the child's best interest. The statute's use of the word "may," rather than "shall," signifies that the steps prescribed in § 9–102 are available, but not mandatory; such is the ordinary and natural import of the word.... The discretionary import of the statute is thus consonant with the common-law rule that grandparents have no inherent right to custody of their grandchildren....

We observe in this regard that the 1981 grandparents' visitation statute represented the culmination of a four-year effort to enact legislation to afford visitation rights to grandparents.... It tracked the language of House Bill 1205, introduced in the 1979 Session of the General Assembly (but not enacted), as to which its sponsor, then Delegate Pica, explained its content to the House Judiciary Committee:

"In HB 1205 grandparents are not automatically deemed a group to be considered in the awarding of visitation rights. They are, however, a category that may be considered for visitation rights. And once they are considered, they may be awarded the rights if it is in the best interest of the child.

\*        \*        \*

"The language puts no mandatory restrictions on a judge when he determines visitation rights. It only offers a category he may consider if the child would benefit from the visits."

(Emphasis in original.) As the 1979 House Bill and § 9–102, as enacted in 1981, were substantively identical, Delegate Pica's statement of the legislation's intent applies to the current statute, and is consistent with its plain language. *Fairbanks v. McCarter, supra,* 330 Md. at 46–47, 622 A.2d 121 (citations omitted).

■ The statute does not require a threshold finding of exceptional circumstances in order to justify an order for grandparent visitation. *Fairbanks, supra,* 330 Md. at 48, 622 A.2d 121. The Court of Appeals explained further:

Nor is there anything in § 9–102 to indicate in any way that a grandparent's right to petition for visitation with a child stems from a corresponding right enjoyed by the parent. In other words, the visitation rights of a grandparent are not derivative. *Weichman v. Weichman,* 50 Wis.2d 731, 184 N.W.2d 882, 885 (1971); *accord Bennett v. Bennett,* 150 N.J.Super. 509, 376 A.2d 191, 193 (1977). Rather than functioning within a sub-set of parental visitation law, the grandparent's right to seek visitation under § 9–102 exists independently.

We thus hold, in sum, that under § 9–102 grandparents enjoy an independent right to petition for visitation with their grandchildren. Grandparents are not obliged to support their claim by alleging and proving the existence of exceptional circumstances justifying such visitation. The outcome of the grandparents' petition lies within the sound

discretion of the trial court, guided solely by the best interests of the grandchild. In the instant case, the trial court appears to have permitted other considerations to intrude into and color its decision. The grandchild's best interest is paramount. *Hixon v. Buchberger,* 306 Md. 72, 83, 507 A.2d 607 (1986). Indeed, it is the exclusive determinant.

*Fairbanks, supra,* 330 Md. at 48–49, 622 A.2d 121.

In *Fairbanks,* the Court of Appeals discussed the factors to be considered when determining the best interests of the child with respect to grandparent visitation:

Common experience dictates that visits with grandparents often offer benefits to children which cannot be derived from any other relationship. *Mimkon v. Ford,* 66 N.J. 426, 332 A.2d 199, 204–205 (1975) . . . As a general proposition, visitation awarded to adults is not for their gratification or enjoyment, but to fulfill the needs of the child. . . . The trial court must concern itself solely with the welfare and prospects of the child. In so doing, the court should assess in their totality all relevant factors and circumstances pertaining to the grandchild's best interests. These would include, but not be limited to: the nature and stability of the child's relationships with its parents; the nature and substantiality of the relationship between the child and the grandparent, taking into account frequency of contact, regularity of contact, and amount of time spent together; the potential benefits and detriments to the child in granting the visitation order; the effect, if any, grandparental visitation would have on the child's attachment to its nuclear family; the physical and emotional health of the adults involved; and the stability of the child's living and schooling arrangements.

*Fairbanks, supra,* 330 Md. at 49–50, 622 A.2d 121 (citations omitted).

**I. Did the trial court err in granting visitation over appellant's objections in derogation of his due process right under the Fourteenth Amendment of the United**

*States Constitution to make decisions about his children?*

■ Appellant argues that by ordering visitation with his children over his objections, the trial court committed error, by failing to apply the Supreme Court's ruling in *Troxel,* and misinterpreted the scope of the Supreme Court's decision in *Troxel,* as well as our decision in *Brice.*

The constitutionality of grandparent visitation statutes was addressed by the United States Supreme Court in *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The facts of the *Troxel* case were addressed fully by this court in *Brice v. Brice,* 133 Md.App. 302, 754 A.2d 1132 (2000):

> The Troxels requested two weekends of overnight visitation per month and two weeks of visitation during the summers. Granville did not oppose visitation and conceded that grandparent visitation was in the best interests of the children, but, instead, asked the court to order one day of visitation per month with no overnight stay. The Superior Court granted the Troxels visitation one weekend per month, one week during the summer, and four hours on the Troxels' birthdays. Granville appealed to the Washington Court of Appeals, which reversed the lower court's decision and dismissed the petition, holding that the Troxels lacked standing. The Troxels appealed to the Washington Supreme Court, which held that, although the Troxels had standing to seek visitation, § 26.10.160(3) of the Revised Code of Washington was unconstitutional on two grounds. First, the statute failed to require a showing of harm or potential harm to the child, which is required before the State can interfere with parents' rights to rear their children. Second, the statute was too broad.

133 Md.App. at 307–308, 754 A.2d 1132.

Although the Supreme Court, in *Troxel,* found the Washington statute to be impermissibly broad, the Court declined to declare all grandparent visitation statutes *per se* unconstitutional:

We do not, and need not, define today the precise scope of the parental due process right in the visitation context. In this respect, we agree with JUSTICE KENNEDY [*sic*] that the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied and that the constitutional protections in this area are best "elaborated with care." Post, at 9 (dissenting opinion). Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a per se matter. See, e.g., *Fairbanks v. McCarter*, 330 Md. 39, 49–50, 622 A.2d 121, 126–127 (1993) (interpreting best-interest standard in grandparent visitation statute normally to require court's consideration of certain factors) . . . "

*Troxel, supra,* 530 U.S. at 73–74, 120 S.Ct. 2054.

In *Brice*, we did not find Fam. Law § 9–102 to be unconstitutional. Rather, we held that it was unconstitutionally applied in that case. However, as the Supreme Court in *Troxel* noted, citing to the Court of Appeals in *Fairbanks*, much state-court adjudication in the application of non-parental visitation statutes occurs on a case-by-case basis. Indeed, while in *Brice* § 9–102 was found to be unconstitutionally applied, we do not reach the same conclusion here, based upon our review of the record before us.

Appellant persistently argues that the trial court must abide by the ruling in *Troxel*, and we agree. The Supreme Court had issues with the Washington statute beyond its sweeping breadth, namely, the application of the statute to the facts of *Troxel*, and the absence of any additional considerations by the trial court in determining visitation. The Court stated:

[I]n practical effect, in the State of Washington a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests. . . .

Turning to the facts of this case, the record reveals that the Superior Court's order was based on precisely the type of mere disagreement we have just described and nothing more. The Superior Court's order was not founded on any special factors that might justify the State's interference with Granville's fundamental right to make decisions concerning the rearing of her two daughters.

*Troxel, supra,* 530 U.S. at 67–68, 120 S.Ct. 2054 (emphasis in original). The Supreme Court further faulted the Washington Superior Court for failing to accord any weight to the determination of Granville as a fit custodial parent. *Troxel, supra,* 530 U.S. at 72, 120 S.Ct. 2054.

Appellant argues that the trial court ignored the precedential value of *Troxel* by finding that the rule of *Troxel* was inapplicable. We do not read the trial court's ruling as does appellant. The court simply found that this case did not fit within the specific holdings of *Troxel* and *Brice,* because the extant facts would not support a finding of unconstitutional application of the visitation statute. Having thus concluded, the court moved on to consider and apply the factors set forth in *Fairbanks* to determine appropriate visitation.

Appellant asserts that the facts of the present case "closely parallel the facts in both *Troxel* and *Brice.*" Specifically, appellant notes that here, as in both *Troxel* and *Brice,* the grandmother was not denied visitation, but that he wanted only to place limitations on her visitation. Further, appellant notes that there was no allegation in those cases, as there is not here, that the father was an unfit parent. Appellant argues,

"Thus, the trial court had no basis to ignore [appellant's] objections to visitation in the face of [his] fundamental right to make these decisions concerning the care and custody of his children. Without some evidence that [appellant] was unfit or was not acting in the best interests of the children, then his decision to limit visitation with [appellee] must be respected."

Contrary to appellant's allegations, the trial court **did not** ignore his objections to visitation with Wain, as we shall discuss, *infra.* The trial court was correct in its assessment of the *Brice* holding—that Fam. Law § 9–102 is not *per se* unconstitutional, rather that under the facts in that case the statute was unconstitutionally applied. Not only is Maryland's grandparent visitation statute not impermissibly broad, as was the Washington statute, the *court's consideration* went beyond just the best interests of the children when determining visitation. In fact, in its opinion, the trial court addressed each of the factors set forth in *Fairbanks,* suggested by this court (and cited favorably by the Supreme Court in *Troxel* ), to ensure a proper analysis of a grandparent visitation case beyond that which impermissibly occurred in *Troxel.*

In the final analysis, the court did as directed by *Fairbanks*—it considered and applied the relevant factors and fashioned a visitation schedule that served the best interests of the children. In fact, after pointing out that the only impediment to successful visitation was the intransigent and hostile conduct of the parties toward each other, the court ordered what promised to be a constructive approach—counseling and mediation, followed by a gradual resumption of visits. Of course, at this juncture, we do not know the success of that plan. What we do find is that appellant's due process rights as a parent have not been abrogated.

## II.  Did the trial court err in failing to apply a presumption in favor of appellant's decision to limit appellee's visitation with the children?

The rights of parents to make important decisions for their children is well established:

> It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. And it is in recognition of this that [our] decisions have respected the private realm of family life which the state cannot enter.

*Wolinski v. Browneller,* 115 Md.App. 285, 299, 693 A.2d 30 (1997) (quoting *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (citation omitted)). However, the rights of a parent are not absolute:

> The Supreme Court has emphasized, however, that "rights of parenthood are [not] beyond limitation," *Prince,* 321 U.S. at 166, 64 S.Ct. 438, and that the "state has a wide range of power for limiting parental freedom and authority in things affecting a child's welfare....". *Id.* at 167, 64 S.Ct. 438. Thus, a parent's right to direct his or her child's upbringing is not absolute. Rather, Due Process analysis requires the delicate balancing of all of the competing interests involved in the litigation. *See, e.g., City of Akron v. Akron Center for Reproductive Health,* 462 U.S. 416, 427, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) (balancing individual's rights against the State's interest in regulating abortion); *Yoder,* 406 U.S. at 221, 92 S.Ct. 1526 (balancing individual religious freedom and parental autonomy against the State's interest in preparing citizens to be self-reliant participants in society). In the context of most family law disputes over children, the State's interest is to protect the child's best interests as parens patriae—a derivation of the State's interest in protecting the health, safety, and welfare of its citizenry.

*Wolinski, supra,* 115 Md.App. at 300, 693 A.2d 30 (some citations omitted).

■ Indeed, appellant is correct in his argument that a presumption in favor of a parent's decision concerning visitation with a third party should be considered by the court. We addressed the presumption in *In re Tamara R.,* 136 Md.App. 236, 764 A.2d 844 (2000):

> The Supreme Court's citation of *Fairbanks* as an example of "state-court adjudication [occurring] on a case-by-case basis" that might be acceptable, suggests to us that the above factors might be sufficient to remove Fairbanks from the category of cases whose disposition rests on "a simple disagreement between the [trial court] and [the parent] concerning [the child's] best interests." *Troxel,* 120 S.Ct. at

2063, 120 S.Ct. 2054. *Troxel* does seem to require, however, that we superimpose upon these factors some deference to the parent's determination of what is in the child's best interest. The best way to do this, we believe, is to apply a presumption that the parent's decision to decline visitation is in the best interest of the child over whom the parent has custody, and to place the burden on the non-parent seeking visitation to rebut that presumption. This presumption would be similar to the one we applied in determining a visitation schedule. In *Wolinski v. Browneller,* 115 Md. App. 285, 693 A.2d 30 (1997), Judge Davis, writing for this Court, held that a

> parent's proposed schedule of visitation is entitled to a presumption that it is in the best interests of the child.... Proper regard for a parent's constitutional rights requires that the burden to produce testimony or other evidence discrediting a parent's proposed visitation schedule be placed upon the grandparents who petition for vested visitation rights. Simply to ignore a parent's wishes regarding the time his or her child should spend outside the family home, and outside of his or her immediate care and custody, is to trample improperly on the parent's liberty interest in directing the upbringing of his or her child. Nevertheless, in light of the State's compelling interest in protecting the child's welfare and the minimal severity of the intrusion upon parental rights, the presumption in favor of appellant's schedule may be rebutted by affirmative evidence that the schedule would be detrimental to the child's best interests....

We think *Troxel* compels the court to apply a rebuttable presumption in favor of parents who oppose a non-parent's petition for visitation with their custodial children. See *Troxel,* 120 S.Ct. at 2063–64.

136 Md.App. at 252–53, 764 A.2d 844 (alterations in original) (Citations omitted).

■ Appellant argues that the trial court erred because it did not, in addition to its consideration of the factors in

*Fairbanks,* give appellant's "decision" concerning visitation the proper presumption. Further, appellant argues that the trial court erred because it "focused its analysis solely on the best interests of the child with no regard to the wishes of the father, as mandated by *Brice* and *Troxel.*" We disagree with appellant's assessment of the court's factual determination.

The trial court, though awarding future visitation with Wain, suspended visitation until both Herrick and Wain met with Dr. Donahoe, the children's therapist, and until the court held a subsequent hearing to discuss the parties' progress in reaching some accord as to appropriate visitation. The record reflects that the trial court did give due consideration to appellant's concerns. In its opinion, the trial court stated:

[Appellant]'s main sticking point is the fact that he feels that [appellee] disrespects him as the children's father. **He stated that he felt that all visits should be suspended, temporarily.** He wants [appellee] to work with Dr. Donahue in the hope that she will come to have a better understanding of the children's needs and that she must respect [appellant's] role as their father. [Appellant] testified that, when the visits resume, he feels that they should take place in his home because it is a safe, secure place for the children. **However, [appellant] stated that, although he believes the visits should cease temporarily, he will abide by whatever Dr. Donahue recommends.**

(Emphasis added). The court essentially ordered what appellant had requested, and that to which he had agreed. The record belies any conclusion that his concerns were ignored by the court.

Dr. Donahue ultimately recommended that all visits with Kane and his grandmother take place away from appellant's home due to tension between Herrick and Wain. She recommended further that it is important for the relationship between Kane and his grandmother to be maintained, and that visits of three to four hours, outside appellant's home, would be appropriate. Dr. Donahue also urged that the conflict between the parties subside, in the interest of the children.

The trial court was correct in stating, "[A]lthough the children's father's proposed visitation schedule is entitled to due consideration, the Court emphasizes once again that the best interest of the child supercedes all other considerations."

We have noted that appellant's preferences on visitation were properly considered by the court, as they should have been. If the custodial parent's preference were absolute, the need for a grandparent visitation statute would be obviated, for a parent could deny visitation without recourse. Appellant argues that his decisions concerning visitation of the children are presumed to be in the children's best interests. That presumption, however, is not absolute; it is rebuttable and has been, on the evidence presented in this case, rebutted.

The court's role as protector of the child requires that it weigh all evidence and consider all relevant factors, and make a decision that is in the best interests of the children. Appellant argues that appellee presented no evidence sufficient to rebut the presumption that appellant's decision regarding visitation was in the child's best interests. We find sufficient evidence in the record to support the trial court's decision.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED;**

**COSTS TO BE PAID BY APPELLANT.**