972 A.2d 905

Sharon **BARRETT**

v.

Bryan **AYRES, Sr., et ux.**

No. 1222, Sept. Term, 2008.

Court of Special Appeals of Maryland.

June 3, 2009.

2

Samantha Z. Smith (Timchula & Smith PA on the brief), Westminster, for appellant.

Leigh Goodmark of Baltimore, for appellee.

Panel: DEBORAH S. EYLER, WOODWARD, JAMES A. KENNEY, III, (Retired, Specially Assigned), JJ.

KENNEY, J.

In this case, we are asked to interpret the effect of *Koshko v. Haining*, 398 Md. 404, 921 A.2d 171 (2007), on a pre-Koshko grandparent visitation order entered by the Circuit Court for Carroll County pursuant to Maryland Code (1984, 2006 Repl. Vol.) § 9–102 of the Family Law Article ("FL"), known as the Grandparent Visitation Statute ("GVS"). More particularly, we must consider whether modification of the GVS order requires the showing of a material change in circumstances, and, if so, whether such a change in circumstances was shown in this case.

Appellant, Sharon Elaine Barrett ("Sharon"), is the mother of Aliza Marie Ayres ("Aliza"). Appellees, Bryan Scott Ayres, Sr. ("Scott"), and Helen Ayres ("Helen") (together "the Ayreses"), are Aliza's paternal grandparents and the parents of Aliza's father, Bryan Scott Ayres, Jr. ("Bryan"). Sharon and Bryan were never married.

The relationship between the parties had been amicable until Bryan was seriously injured in a motor vehicle accident in 2004. He remains in a coma to this day. After the accident, relationships among the parties grew strained, and, as a result, Sharon prohibited the Ayreses from visiting Aliza. The Ayreses petitioned for and were granted visitation under the GVS on April 10, 2006.

Sharon filed a Motion to Modify Grandparent Visitation ("Motion to Modify") before the Circuit Court for Carroll County on April 6, 2007. Citing *Koshko,* she sought to terminate visitation based on the further deterioration of the relationship between her and the Ayreses. After a hearing, a Master issued a Report and Recommendation dated November 1, 2007, in which he concluded that visitation should be terminated based on the Ayreses inability to establish, under *Koshko,* that Sharon was unfit or that exceptional circumstances existed that permitted the court to infringe on Sharon's fundamental parental rights.

The Ayreses filed exceptions to the Master's Report. After an evidentiary hearing, the circuit court denied Sharon's Mo-

tion to Modify, based on a finding of no material change in circumstances.

Sharon filed this timely appeal and presents one question for our review, which we have slightly revised:

Did the trial court err in its interpretation and application of Maryland statutory and case law in ruling that the Motion to Modify Grandparent Visitation was not supported by a material change in circumstances?

For the reasons that follow, we shall vacate the judgment of the circuit court and remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Aliza was born on March 21, 2004. In December 2004, Bryan was seriously injured in an automobile accident. Because he has remained in a coma since the accident, he does not have an interactive relationship with Aliza.

At first, Sharon provided the Ayreses with regular access to Aliza, and allowed them to take Aliza to the hospital to see her father. As the parties struggled to deal with the situation, their relationship became strained. In March of 2005, Sharon began denying the Ayreses access to Aliza. The Ayreses filed for court-ordered visitation under the GVS in the Circuit Court for Carroll County on May 6, 2005. They sought visitation with Aliza at least one evening during the week and twice each weekend. Sharon did not contest all visitation, but she would only agree to visitation twice a month.

A hearing was held before a Master on November 7, 2005. In his Recommendation and Report, dated January 12, 2006, the Master discussed the United States Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). He stated:

In *Troxel*, ... the Supreme Court of the United States stated that the rights of parents to make decisions concerning the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by that Court. It is a right protected by the 14th

Amendment of the United States Constitution. Consequently, the Court stated that so long as a parent adequately cares for their child, that is, they are a fit and proper parent, there is no reason for the State to inject itself into the private realm of the family, or to question the ability of the parent to make the best decisions concerning the rearing of that parent's child. The Court further stated that there is a presumption that a fit parent will act in the best interest of their child, and that special weight must be given to the parent's own determination regarding the parent's fundamental constitutional right to make decisions regarding the rearing of their child. Finally, the Supreme Court stated that the due process clause of the Constitution does not permit a State to infringe on this fundamental right simply because a judge believes a better decision could be made.... In the *Troxel* case, the Supreme Court did not hold that all grandparent visitation statutes were unconstitutional, but can be unconstitutionally applied in a case.

The Master then reviewed the post-*Troxel* application of the GVS by the Maryland appellate courts, including *Herrick v. Wain*, 154 Md.App. 222, 838 A.2d 1263 (2003). There, this Court superimposed the presumption that the parent is acting in the best interest of his or her child when making decisions concerning visitation on the best-interest-of-the-child factors that the Court of Appeals had determined should be considered when applying the GVS in *Fairbanks v. McCarter*, 330 Md. 39, 622 A.2d 121 (1993).[1]

---

1. The *Fairbanks* Court proposed a non-exclusive list of factors for the trial court to consider when evaluating the best interests of a child, which included:

 [T]he nature and stability of the child's relationships with its parents; the nature and substantiality of the relationship between the child and the grandparent, taking into account frequency of contact, regularity of contact, and amount of time spent together; the potential benefits and detriments to the child in granting the visitation order; the effect, if any, grandparental visitation would have on the child's attachment to its nuclear family; the physical and emotional health of the adults involved; and the stability of the child's living and schooling arrangements.

 *Fairbanks*, 330 Md. at 50, 622 A.2d 121.

Guided by this analysis, the Master first found that Sharon was a fit and proper parent, and, therefore, entitled to the presumption that she was acting in Aliza's best interest regarding visitation. The Master then considered the *Fairbanks* factors and found that there was no reason to conclude that Aliza had anything but a close relationship with her mother and little or no relationship with the Ayreses. Because the Ayreses had not overcome their burden of rebutting the presumption in favor of Sharon's decision regarding the nature and extent of visitation she was willing to allow the Ayreses, the Master recommended a visitation order consistent with Sharon's determination of what the visitation should be.

On January 31, 2006, both parties stated in the Line to Cancel Settlement Conference, filed jointly by the parties, that they accepted the decision of the Master as a full and final resolution of the matter then before the circuit court. On April 10, 2006, the circuit court, upon consideration of the Master's Report and Recommendation, granted the Ayreses visitation with Aliza on the first Saturday of each month from 10:00 am to 6:00 pm, the third Wednesday of each month from 5:00 pm to 8:00 pm, and at such other times as agreed upon between the parties.

On April 6, 2007, Sharon filed a Motion to Modify, in which she stated:

That circumstances have changed since the entry of the court's last order in that the acrimony between the parties has increased. The [Ayreses] have been dissatisfied with the level of visitation granted by the court. As a result, they have continued to pressure [her] for additional visits. [She] has been unwilling to expand the visits and arguing and problems have ensued.

That tensions between the parties have been exacerbated by actions of the [Ayreses]. In addition to a constant barrage of visitation requests and anger when those requests are denied, the [Ayreses] refuse to advise [her] of where they will be during visits. They have refused to

answer the phone when she called to check in during the
visits. They have brought the child back late from visits.
They have allowed their son who only recently got his
driver's license to drive the child.

That under the holding in *Koshko v. Haining* decided by
the Court of Appeals on January 12, 2007, there is a
rebuttable presumption in favor of parental decisions con-
cerning visitation with grandparents.

That the continuous arguments and problems are creating
a tense and stressful environment which is not beneficial for
the minor child. The child is not gaining any benefit from
these visits. The child's best interests would be served by
ending the visitation between the child and the [Ayreses].

The Ayreses filed an answer, and a hearing was held before
a Master on September 4, 2007. Both parties testified that
arguments regarding visitation have occurred. Sharon argued
that *Koshko* "controls the case." The Ayreses agreed that
"*Koshko* ... is indeed the current State of the law on the
issue," but argued that "it applies only to initial judicial
determinations of visitation between parents and third parties
and ... does not apply to cases seeking the modification of an
existing Court Order." They argued that Sharon "must show
a material change in circumstance before the Court could
modify its Order."

In his Report and Recommendation, dated November 1,
2007, the Master found:

[The Ayreses'] position that before a[c]ourt can modify one
of its Orders it must be persuaded by competent proof that
a material change in circumstance exists since the issuance
of the Order sought to be modified is trumped in the instant
case by the dictates in *Koshko v. Haining.* [The] Master's
reading of *Koshko v. Haining* lead[ ] him to conclude that
unless [Sharon] is found to be unfit, or unless some excep-
tional circumstances exist which indicate that the lack of
grandparental visitation would have some deleterious effect
upon [Aliza] the "best interests" test is not applicable.

The Master recommended that "the relief prayed by [Sharon] in her Complaint to Modify Child Visitation be granted."

The Ayreses took the following exceptions to the Master's Recommendation and Report:

1. That the Master erred in ruling that the decision in *Koshko* was controlling;

2. That the Master erred in ruling that [Sharon] did not have the burden of proving a material change in circumstances existed to justify the relief she requested;

3. That the Master erred in terminating the grandparent visitation rights of the [Ayreses].

Sharon responded:

1. That [she] opposes the [Ayreses'] Exceptions and asserts that the Master's Ruling is proper decision [sic] and a proper application of the case of *Koshko v. Haining* . . . .

2. That the Master did not err in making the recommendation that the [Ayreses'] visitation be terminated.

3. That the evidence presented before the [M]aster was that [she] is a fit and proper parent. No evidence of detriment to the child in the absence of grandparent visitation was shown. Due to [Aliza's] young age, arguably, it would be very difficult to show an actual detriment.

4. That the *Koshko* case stands for the proposition that before a trial court considers a best interest standard for visitation, the court must first find prima facie evidence of parental unfitness or exceptional circumstances demonstrating current or future detriment to the child absent grandparent visitation . . . . .

5. That in the current case, a fit parent made the decision that grandparent visitation should be terminated. Her decisions related to visitation must be honored unless unfitness or detriment to [Aliza] can be shown. In the absence of these showings, as was in this case, the termination of visitation was the proper result.

The Ayreses requested the appointment of a best interest attorney, which the court denied.

The circuit court conducted a hearing on the exceptions, and, on June 23, 2008, entered an order denying the Motion to Modify. In an accompanying Opinion, the court stated:

[T]he issue is whether or not there is a material change in circumstances, such as to justify a termination or restriction on visitation between [Aliza] and the [Ayreses]. The [c]ourt finds that there is no material change in circumstances to justify the relief prayed, and will therefore enter an Order dismissing the pending [Motion to Modify] and allow the present visitation Order to stand.

This appeal followed.

## STANDARD OF REVIEW

Orders related to visitation or custody are generally within the sound discretion of the trial court, not to be disturbed unless there has been a clear abuse of discretion. *See Walter v. Gunter,* 367 Md. 386, 391–92, 788 A.2d 609 (2002); *Beckman v. Boggs,* 337 Md. 688, 703, 655 A.2d 901 (1995). However, where the order involves an interpretation and application of statutory and case law, the appellate court must determine whether the circuit court's conclusions are "legally correct" under a *de novo* standard of review. *Walter,* 367 Md. at 391–92, 788 A.2d 609.

## DISCUSSION

In *Troxel,* 530 U.S. at 57, 120 S.Ct. 2054, the United States Supreme Court addressed a constitutional challenge to Washington State's third-party visitation statute. The result was a plurality opinion authored by Justice O'Connor, separate concurring opinions by Justices Souter and Thomas, and three individual dissenting opinions by Justices Stevens, Scalia, and Kennedy. The plurality opinion and the two concurrences concluded that the statute violated the dictates of federal due process. *Koshko,* 398 Md. at 421, 921 A.2d 171 (citing *Troxel,* 530 U.S. at 68, 120 S.Ct. 2054).

At the outset, the plurality observed that "contained within the bounds of the federal *Due Process Clause* is a fundamental

liberty interest bestowed upon parents concerning the 'care, custody, and control' of their children." *Id.* (citing *Troxel* at 65–66). The Court determined that the trial court had failed to honor the "traditional presumption that a fit parent will act in the best interest of his or her child," and that the trial court had erred in not assigning "some special weight" to the parent's estimation of her child's best interests. *Id.* (citing *Troxel* at 70, 120 S.Ct. 2054).

Although the Court "declined to decide whether the *Due Process Clause* requires all grandparental visitation statutes to mandate a threshold showing of harm to the children as a prerequisite to granting visitation," it stated that "the resolution of a grandparental visitation petition cannot be made upon the basis of a 'simple disagreement between the [trial court] and [parent] concerning the children's best interests.' " *Koshko*, 398 Md. at 422, 921 A.2d 171 (quoting *Troxel* at 72–73, 120 S.Ct. 2054).

In 2007, the Court of Appeals, in *Koshko,* addressed a constitutional challenge to Maryland's GVS. In that case, the maternal grandparents petitioned for visitation with their three grandchildren. The parents of the children were precluding the grandparents from visiting because the parties had had a falling out. The Court was asked to decide whether, under a substantive due process analysis, the GVS was unconstitutional, because it failed to recognize a rebuttable presumption accorded the propriety of a parent's determination of what is in his or her child's best interest with respect to visitation with a grandparent. *Id.*

Before addressing the validity of Maryland's GVS, the Court surveyed the "relevant precedential guideposts framing the constitutional landscape and informing [its] analysis" in "evolutionary order." *Koshko,* 398 Md. at 412, 921 A.2d 171.

The Court first addressed the GVS in 1993, in *Fairbanks,* 330 Md. at 39, 622 A.2d 121. *Fairbanks* "arose from a disagreement between a divorced father and maternal grandparents over the amount of time the maternal grandparents should be permitted to visit with the children." *Koshko,* 398

Md. at 413, 921 A.2d 171 (citing *Fairbanks,* 330 Md. at 43, 622 A.2d 121). The grandparents filed a petition under the GVS, which the trial court denied "because it found that the grandparents had not demonstrated exceptional circumstances militating that visitation should be ordered." *Id.* (citing *Fairbanks* at 44, 622 A.2d 121).

The *Fairbanks* Court considered whether a finding of exceptional circumstances must be made before visitation could be ordered. The Court concluded that the plain language of the GVS required neither a predicate showing of exceptional circumstances nor parental unfitness before an award of visitation to grandparents could be ordered, because "[v]isitation is a considerably less weighty matter than outright custody of a child, and does not demand the enhanced protections, embodied in the exceptional circumstances test, that attend custody awards." *Fairbanks,* 330 Md. at 48, 622 A.2d 121. Therefore, the best interest of the child standard was dispositive. *Id.* at 49, 622 A.2d 121. The *Fairbanks* Court provided a non-exclusive list of factors to be considered when evaluating the best interests of a child, as set forth in footnote 1, *supra.*

The *Koshko* Court noted that the *Fairbanks* "best interest" analysis was followed in the pre-*Troxel* cases of *Beckman v. Boggs,* 337 Md. 688, 655 A.2d 901 (1995), *Maner v. Stephenson,* 342 Md. 461, 677 A.2d 560 (1996), and *Wolinski v. Browneller,* 115 Md.App. 285, 693 A.2d 30 (1997).

In *Wolinski,* we held that "a court's granting of a grandparent's visitation *schedule* (as opposed to the grant of visitation in the first instance) over that of a parent's preference was even less of an affront to the parent's constitutional rights." *Koshko,* 398 Md. at 416, 921 A.2d 171 (citing *Wolinski,* 115 Md.App. at 307, 693 A.2d 30) (emphasis in original). We recognized the constitutional presumption favoring the parents' determination of what is in their child's best interest in grandparent visitation disputes, but we stated that "the presumption favoring a parent's wishes regarding their child ... could be overcome by a trial court's contrary finding of visitation being in a child's best interest, a determination

which is entitled to deference upon judicial review." *Id.* at 416–17, 921 A.2d 171 (citing *Wolinski* at 319, 693 A.2d 30).

The *Koshko* Court also reviewed the post-*Troxel* cases of *In re Tamara R.*, 136 Md.App. 236, 764 A.2d 844 (2000), *Herrick*, 154 Md.App. at 231–32, 838 A.2d 1263, and *McDermott v. Dougherty*, 385 Md. 320, 869 A.2d 751 (2005).

*Tamara R.*, a third-party visitation case, involved a father who wished to prevent his child, who had been adjudicated a child in need of assistance, from seeing his other children. In *Tamara R.*, we "viewed" the *Fairbanks* best interest factors "through a lens deferring to a parent's wishes," by applying "a presumption that the parent's decision to decline visitation is in the best interest of the child over whom the parent has custody, and [placing] the burden on the non-parent seeking visitation to rebut that presumption." *Koshko*, 398 Md. at 418, 921 A.2d 171 (citing *In re Tamara R.* at 252, 764 A.2d 844).

In *Herrick*, a grandparent visitation case, we followed *Fairbanks* and did not require a showing of exceptional circumstances before granting grandparent visitation. The *Koshko* Court noted that "[t]he *Herrick* court also quoted approvingly from *Wolinski* the proposition that petitioning grandparents bear the burden of producing evidence sufficient to satisfy the *Fairbanks* factors regarding rebuttal of the parental presumption." *Koshko*, 398 Md. at 419, 921 A.2d 171 (citing *Herrick* at 238, 838 A.2d 1263).

In *McDermott*, a grandparent custody case, the Court of Appeals stated that "fit parents stand in a position superior to third parties relative to the constitutional right to the 'care, custody, and control' of their children." *Koshko* at 419, 921 A.2d 171 (citing *McDermott* at 353, 869 A.2d 751). The *McDermott* Court stated:

[G]enerally, in private actions in which private third parties are attempting to gain custody of children of natural parents over the objection of the natural parents, it is necessary first to prove that the parent is unfit or that there are extraordinary circumstances posing serious detriment to

14

the child, before the court may apply a "best interest" standard.

385 Md. at 374–75, 869 A.2d 751. The *Koshko* Court explained the *McDermott* Court's analysis:

> [A]bsent a showing of parental unfitness or exceptional circumstances, "the constitutional right [of parents to the 'care, custody, and control' of their children] is the ultimate determinative factor . . ." Having determined that an examination of whether exceptional circumstances exist should precede the need for a best interest analysis, we embraced the factors enumerated in *Ross v. Hoffman[*, 280 Md. 172, 372 A.2d 582 (1977) ] for identifying exceptional circumstances.

*Koshko*, 398 Md. at 419–20, 921 A.2d 171 (quoting *McDermott*, 385 Md. at 418–19, 869 A.2d 751) (citations omitted).

With this analysis as a backdrop, the *Koshko* Court announced its decision. The Court recognized "the fundamental right of parents generally to direct and control the upbringing of their children." *Id.* at 422, 921 A.2d 171 (citations omitted). Accordingly, "[t]his liberty interest provides the constitutional context which looms over any judicial rumination on the question of custody *or visitation*," and "[a]s a natural incident of possessing this fundamental liberty interest, [parents] are entitled to the long-settled presumption that a parent's decision regarding the custody or visitation of his or her child with third parties is in the child's best interest." *Id.* at 423, 921 A.2d 171 (emphasis added) (citations omitted). By "read[ing] into the GVS the parental presumption both as mandated by substantive due process and traditionally observed in Maryland common law," the Court concluded that the GVS was not facially invalid. *Id.* at 426, 921 A.2d 171.

The Court then addressed whether the GVS was unconstitutional as applied to the parents in *Koshko*, where the trial court did not require the grandparents to demonstrate that the parents were unfit or that exceptional circumstances existed to overcome the presumption in favor of the wishes of custodial parents before awarding visitation. The Court un-

dertook that analysis "mindful that visitation is a species of custody, albeit for a more limited duration." *Id.* at 429, 921 A.2d 171 (citing *Beckman,* 337 Md. at 703 n. 7, 655 A.2d 901) (other citations omitted). It acknowledged that in *Fairbanks* it previously had held that visitation did not demand the enhanced protections embodied in the exceptional circumstances test that attend custody awards, *id.* at 429–30, 921 A.2d 171 but it made clear that this was no longer the case:

There is no dispute that the grant or modification of visitation involves a lesser *degree* of intrusion on the fundamental right to parent than the assignment of custody. We except from this notion, however, that, because of this conceptualization, visitation somehow ranks lower on the "scale of values" such that its determination does not require the application of stringent tests as is the case with custody. In other words, although there may be a difference in the degree of intrusion, it is not a difference of constitutional magnitude. Visitation, like custody, intrudes upon the fundamental right of parents to direct the "care, custody, and control" of their children. Though visitation decisions granting such privileges to third parties may tread more lightly into the protected grove of parental rights, they tread nonetheless. As will be shown, *infra,* the weight to the footfalls on that territory is sufficiently direct and substantial as to require rigorous scrutiny.

*Id.* at 430–31, 921 A.2d 171 (emphasis in original) (internal citations and footnote omitted).

Because the Maryland GVS may work a "direct and substantial" interference with parents' fundamental right to parent, strict scrutiny is required:

The sentiment expressed by Maryland courts heretofore, instigated no doubt by the language in *Fairbanks,* that visitation matters deserve less scrutiny than custody matters is, upon reflection, incorrect. We shall not perpetuate this notion further, particularly in the wake of the *Troxel* Court's strong affirmation of parental rights in the grandparental visitation context. For the purposes of constitutional analysis, parental autonomy is encroached upon equally by

visitation matters as it is with custody disputes when the state interference is "direct and substantial."

*Koshko* at 434, 921 A.2d 171 (emphasis in original) (internal citations and footnotes omitted).

Applying strict judicial scrutiny, the Court recognized that the State had a compelling interest, based on its "overarching role as *parens patriae* to ensure the well-being of Maryland's children," but determined that there was "reason to doubt the narrow tailoring of the [GVS] to vindicate the State's interest." *Id.* at 438–39, 921 A.2d 171.

The Court decided that the parental presumption alone was not sufficient to preserve the constitutionality of the GVS:

> A proceeding that may result in a court mandating that a parent's children spend time with a third party, outside of the parent's supervision and against the parent's wishes, no matter how temporary or modifiable, necessitates stronger protections of the parental right. The importance of parental autonomy is too great and our reluctance to interfere with the private matters of the family too foreboding, whether it be in matters of custody or visitation, to allow parental decision-making to remain that vulnerable to frustration by third parties.

*Id.* at 439–40, 921 A.2d 171.

The Court reasoned that, in third-party custody cases, where parents are fit and no exceptional circumstances are present, " 'the constitutional right is the ultimate determinative factor.' " *Id.* at 440, 921 A.2d 171 (quoting *McDermott*, 385 Md. at 418, 869 A.2d 751). Therefore, to tailor the GVS to the State's interests, it was necessary to apply to third-party visitation disputes the same requirements as were applied in third-party custody cases:

> To preserve fundamental parental liberty interests, we now apply a gloss to the Maryland GVS requiring a threshold showing of either parental unfitness or exceptional circumstances indicating that the lack of grandparental visitation has a significant deleterious effect upon the children who are the subject of the petition. We do so under

the principle of constitutional avoidance ... to engraft onto the GVS a parental presumption.

*Id.* at 441–42, 921 A.2d 171 (internal citations and footnotes omitted).

 Guided by *Koshko,* we turn now to the Ayreses' contention that *Koshko* applies only to initial determinations of visitation disputes between parents and third parties. We begin by recognizing that fit parents and third parties do not stand on equal constitutional footings and that visitation orders, like custody determinations, are never permanent. *See Taylor v. Taylor,* 246 Md. 616, 229 A.2d 131 (1967) ("This Court ... [has] also followed the rule that an award of custody is never absolute, but is always subject to modification."). The constitutionality of the GVS, the legal footing on which the appellees' position rests, is dependent upon the parental presumption and the *Koshko* applied gloss of a threshold showing of parental unfitness or exceptional circumstances indicating that the denial of visitation "would have a significant deleterious effect upon the children who are the subject of the petition." *Id.* at 441, 921 A.2d 171. The fundamental liberty interests of parents "provide[ ] the constitutional context that looms over *any* judicial rumination on the question of custody or visitation." *Koshko,* 398 Md. at 423, 921 A.2d 171 (emphasis added). Therefore, whenever they are encroached upon, the threshold showing required by *Koshko* necessarily applies to both first instance adjudications under the GVS and to subsequent judicial modification of existing GVS orders as well.

 When, as in this case, a parent seeks to modify an existing GVS visitation order, the parent's fundamental rights are paramount. It follows, then, that a third party who opposes a parent's desire to modify a GVS visitation order must make a threshold showing of parental unfitness or exceptional circumstances. Absent such a showing, the court must assume that the modification is in the child's best interest.

Having determined that *Koshko* is controlling in this case, we address the circuit court's determination that Sharon failed to establish a material change in circumstances.[2]

To be sure, custody and visitation orders entered by the court are intended to carry some amount of finality. *McCready v. McCready*, 323 Md. 476, 481–82, 593 A.2d 1128 (1991) ("An order determining custody must be afforded some finality, even though it may subsequently be modified when changes so warrant to protect the best interest of the child In the limited situation where it is clear that the party seeking modification of a custody order is offering nothing new, and is simply attempting to relitigate the earlier determination, the effort will fail on that ground alone."). Because the court does not want feuding parties to have the ability to relitigate the same issues which it has already decided, claim and issue preclusion are bases for denying motions to modify visitation or custody orders. *Id.; See Slacum v. Slacum*, 158 Md. 107, 148 A. 226 (1930). If, however, a party can show a material change in circumstances, that is, circumstances affecting the best interest of the child that were not in existence at the time the original order was made, the court will entertain a motion to modify its previous order. Such a change in circumstances has, in essence, rendered the situation new, and concerns related to issue and claim preclusion are no longer implicated.

Informed by *Koshko, Taylor v. Taylor*, 306 Md. 290 (1986), and *McMahon v. Piazze*, 162 Md.App. 588, 875 A.2d

---

2. We note that some courts, post-*Troxel*, have determined that a decision declaring a statute related to grandparent visitation unconstitutional would itself constitute a change in circumstances. *See Spiker v. Spiker*, 708 N.W.2d 347 (Ia.2006) (In a petition to vacate a grandparent visitation order, the court concluded that the visitation order was subject to modification for change of circumstances, and that declaring the law unconstitutional was a change in circumstances); *In the Interest of T.J.K., a Child*, 62 S.W.3d 830, 832 (Tex.App.–Texarkana, 2001) ("[A parent] has no less a right to seek modification of [a grandparent visitation] order because a statute is found unconstitutional than because of a change of fact. If a statute that authorized a term or condition of visitation is declared unconstitutional, that change should operate like any other change in circumstances that potentially makes the order unworkable or inappropriate.")

807 (2005), we are persuaded that the desire of a fit parent to modify visitation with a third party, in the absence of exceptional circumstances, presents a material change in circumstances.[3] We explain.

Under *Koshko*, absent a threshold showing by the third party of parental unfitness or exceptional circumstances, the court must presume that the parent's decision concerning visitation is in the best interest of his or her child. In *Taylor*, in the context of a child custody case, the Court of Appeals emphasized the importance of the best interest of the child standard:

> We emphasize that in any child custody case, the paramount concern is the best interest of the child. As Judge Orth pointed out for the Court, in *Ross v. Hoffman*, we have variously characterized this standard as being "of transcendent importance" and the "sole question." The best interest of the child is therefore not considered as one of many factors, but as the objective to which virtually all other factors speak.

306 Md. at 303, 508 A.2d 964 (internal citations omitted). Because visitation is a species of custody, the best interest of the child is the paramount concern in any visitation dispute.

In *McMahon*, in considering whether a material change in circumstances had occurred, we stated that "if a court concludes, on sufficient evidence, that an existing provision concerning custody or visitation is no longer in the best interest of the child and that the requested change is in the child's best interest, the materiality requirement will be satisfied." 162 Md.App. at 596, 875 A.2d 807. Under *Koshko*, absent a threshold showing by the third party of parental unfitness or exceptional circumstances, the court must presume that the parent's decision concerning visitation is in the best interest of his or her child. That, in effect, renders the parent's decision

---

3. We leave for another day a determination of what constitutes a material change in circumstances where parental unfitness or exceptional circumstances is found and visitation is granted against the wishes of the parent.

to modify or terminate visitation a change in circumstances that satisfies the materiality requirement.

In this case, Sharon has petitioned the court to modify the existing visitation order. It is, we believe, noteworthy that, initially, Sharon did not oppose some visitation by the Ayreses; she only contested the amount of visitation that they sought. The amount of visitation that Sharon was willing to allow was the amount granted by the Master and agreed to in the original visitation order. In essence, that order was a consent order that recognized *Troxel* and honored the parental presumption.

Sharon, presumably as a fit parent, has determined that the visitation schedule is no longer in the best interest of Aliza. Her reasons for deciding to terminate visitation include the interference of the Ayreses in her daily life, the inability for the parties to communicate about the child, and the general breakdown in the relationship between the parties. She argues that, under *Koshko*, it must be presumed that she is acting in Aliza's best interest, and that modification of the third-party visitation order denying visitation is required unless the Ayreses, by showing that she is an unfit parent or that exceptional circumstances exist, can overcome that presumption. We agree.

The Ayreses have not argued that Sharon is an unfit parent, and there is nothing in the record before us that suggests unfitness. To the extent that the Ayreses might contend that there are exceptional circumstances in this case, we note the observation of the Court of Appeals in *McDermott* that "it is a weighty task ... for a third party ... to demonstrate 'exceptional circumstances' which overcome the presumption that a parent acts in the best interest of his or her children and which overcome the constitutional right of a parent to raise his or her own children." *McDermott*, 385 Md. at 424, 869 A.2d 751.

In *Aumiller v. Aumiller*, 183 Md.App. 71, 959 A.2d 849 (2008), we reviewed the requirements for establishing a *prima facie* case of "exceptional circumstances" under *Koshko*, as

related to a petition for grandparent visitation. The factors to be considered were similar to the factors considered in a best interest analysis. *See Fairbanks, supra,* and *Ross v. Hoffman,* 280 Md. 172, 372 A.2d 582 (1977).

Asked in *Aumiller* to define the term "exceptional circumstances," we declined, stating that exceptional circumstances are to be determined on a case-by-case basis, "whether a case concerns custody or visitation." 183 Md.App. at 84, 959 A.2d 849 (citing *Janice M. v. Margaret K.,* 404 Md. 661, 693, 948 A.2d 73 (2008) ("[E]xceptional circumstances are not established through a rigid test, but rather by an analysis of all of the factors before the court in a particular case.")). We stated that "we cannot formulate a bright line definition or delineate all relevant factors that might exist in a given case." *Id.* at 85. 959 A.2d 849.

We decided in *Aumiller* that the paternal grandparents of children whose father had died were not able to demonstrate the threshold *prima facie* showing of exceptional circumstances, even though the mother might never share with the children certain information about the father that the grandparents wanted them to know. We also rejected the contention that the mother's "unjustified" refusal to allow visitation was itself an exceptional circumstance. *Aumiller,* 183 Md. App. at 82–83, 959 A.2d 849.

In sum, because the court must presume that Sharon's decision concerning visitation is in Aliza's best interest, her decision is, in effect, a material change in circumstances. As a result, the burden shifts to the Ayreses to establish that Sharon is an unfit parent or that exceptional circumstances exist indicating that the lack of grandparent visitation would somehow have a deleterious effect upon Aliza. If the Ayreses fail to do so, the court must grant the Motion to Modify.

**JUDGMENT VACATED AND REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.**